# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 1, 1906.

FRANK S. CLARKSON
VS.
F. EUGENE SLOAN, TRADING AS FRANK B. SLOAN & CO., AND NORRIS SASH PULLEY COMPANY.

*Barton, Wilmer, Ambler & Stewart* for complainant.

*Marbury & Gosnell* for defendant.

NILES, J.—

The questions now before the court in this case arise:

1st. Upon the demurrer filed to the bill by F. Eugene Sloan.

2nd. Upon the setting for hearing of the plea filed to the bill by Norris Sash Pulley Company.

The bill sets forth in effect the following:

Prior to May 1st, 1896, Frank B. Sloan, doing business as F. B. Sloan & Company, and Frank S. Clarkson, were the sole owners of certain patents and business connected with the manufacture of sash pulleys. Prior to the same date, C. Sidney Norris & Co., trustees, conducted a business consisting chiefly of the manufacture and sale of a pully known as "Norris Sash Pulley."

On May 1st, 1896, Norris Sash Pulley Company was incorporated, to take over this business.

It was incorporated under the laws of West Virginia, with a nominal capital of twelve shares, of the par value of $50 each, of which shares Frank B. Sloan was the substantial owner of nine, and Frank S. Clarkson substantial owner of the other three.

All the stockholders resided and still reside in Baltimore, and the headquarters of the business continued to be in Baltimore, the "foreign" incorporation being effected for some "business reasons" which are not disclosed.

Immediately after the incorporation the business of the manufacture and sale of the Norris Sash Pulley, including the name, was transferred to the new company in full payment for the capital stock.

On May 25th, 1896, the company agreed in consideration of the assignment to it of the patents owned by Sloan & Clarkson to pay to Sloan & Clarkson each a royalty of one-half cent on each dozen pulleys sold and this agreement has been in force ever since.

About the same time the new company entered into a contract with C. Sidney Norris & Company, whereby the latter firm became the sole agents for these pulleys. They were to manufacture and sell, pay all expenses, and after deducting a commission of 5 per cent. on all sales, pay the balance over to Norris Sash Pulley Company.

On May 14th, 1899, this agreement was changed by substituting Frank B. Sloan, trading as F. B. Sloan & Co., for C. Sidney Norris & Co., and by agreeing to pay the net profits directly over to the real parties in interest, viz: Three-fourths to F. B. Sloan, and one-fourth to Frank S. Clarkson, instead of going through the formality of first paying these profits to the company, and then having the company distribute them to its shareholders.

Frank B. Sloan, the agent, being three-fourths owner of the company, and Clarkson, owner of the other fourth, being his bookkeeper, there was apparently no trouble caused by this arrangement.

In September, 1905, Frank B. Sloan failed, making an assignment for the benefit of his creditors; the trustee thereunder discharged Clarkson as bookkeeper, and Clarkson thereupon engaged with another house in the same line of business.

The nine shares of stock, however, which had been in the Sloan family still remain in the Sloan family; and the son of Frank B. Sloan, viz.: F. Eugene Sloan, has been elected by the votes of these nine shares, President, secretary and treasurer of the company, and now holds these offices.

This son carries on the same sort of business as was carried on by his father under the same trade name of F. B. Sloan & Co.

After the failure of the father, a contract was made between "F. B. Sloan & Co." the son and Norris Sash Pulley Company, whereof this son, as above stated, was President, Secretary and Treasurer, whereby F. Eugene Sloan, the son, under the name of F. B. Sloan & Co., was substituted as agent for the Pulley Company instead of his father, and was to take his father's place in all respects except that his commissions on sales were to be ten per cent. instead of five per cent.

Frank S. Clarkson not now being in the business family of the Sloans, but still holding as much interest as before in the corporation, made inquiries as to the business, but had difficulty in procuring information. He finally succeeded in being elected a director of the pulley company and in securing a modification of the commissions agreed to be paid the "agent" of the pulley company. As director he demanded to look at the books and was shown books "containing reports of the meetings of stockholders and directors, the officers stating that the company had no other books, all other books, accounts, etc., being the property of the *agents* of the company."

After some fruitless negotiation, Clarkson, as stockholder, formally demanded that the Norris Sash Pulley Company, the company controlled by F. Eugene Sloan, should require from its agent, F. Eugene Sloan, doing business as F. B. Sloan & Co., an accounting.

This accounting Norris Sash Pulley Company refused to require, and the bill charges that such refusal is due to improper and fraudulent motives, or, in other words, flatly charges fraud. Clarkson now asks that F. B. Sloan & Co. be required by the court to give to the Norris Sash Pulley Co. a full and detailed accounting, and that the Nor-

ris Sash Pulley Co. may be required hereafter to exact proper accounts of its agents from time to time.

The bill also charges that Clarkson as an individual, being entitled to a royalty from the Norris Sash Pulley Company, has a right in that behalf to ask an accounting from the defendants, and the prayer for general relief may, perhaps, be taken as including a demand for such accounting.

I. As to demurrer of F. Eugene Sloan.—It would seem that this demurrer can be sustained on the ground that the bill is multifarious.

A case can under certain circumstances be brought by a stockholder against the agent of a company—joining the company as a defendant—for an accounting between the agent and the company, and a case can under certain circumstances be brought against a corporation for an accounting under a contract made by the corporation with the individual seeking the account.

But the two suits are very different in character even though the stockholder seeking to make the agent account to the company is the same individual that has contracted with the company and who seeks to make the company account to himself.

For the determination of these suits the court would have to pursue two independent lines of investigation.

The demurrer to the bill in its present form will be sustained.

But the bill can easily be amended by striking out that part of it which relates to the contract between the company and Clarkson as an individual.

Assuming that such amendment will be made the demurrer will then be overruled.

At the risk of a little repetition let us go over the main allegations of the bill.

It is filed by a stockholder in a corporation asking an accounting between that corporation and its managing agent, between whom and it the relation is so close that the agent does all the buying, all the manufacturing and all the selling, simply turning over to the company what the agent says is the net profit, less his commission.

It alleges that the company has practically no accounts or vouchers given it by its agent, nothing except a

bare statement that his profits amount to a certain sum.

It alleges that the stockholder has demanded from the company that it shall ask for an accounting from its agent, but that the company has refused to do this.

It further alleges that this refusal is due to improper and fraudulent motives, i. e., is fraudulent, the real reason being that the agent and the controlling influence in the company are one and the same person.

The agent by his demurrer admits for the purpose of this decision the truth of all these allegations, but denies that the stockholder is entitled to any remedy.

He says, in effect, "I am the agent not of the individual stockholders, but of the corporation. If I render accounts that are satisfactory to my principal, the corporation, no one else has a right to question me. If any stockholder thinks that the management of the corporation, is ill advised in not requiring more detailed accounts, he raises a question of internal management which does not concern me, and indeed of which the courts cannot take notice even in the case of a domestic corporation, and a *fortiori* of which they have no jurisdiction when the corporation is a foreign one."

The argument seems to lose sight of the special circumstances of this case, and of the fraud charged.

The effect of allowing its validity would be to declare that if, in any corporation, one man can obtain control of a majority of the stock, he may appoint himself "agent," carry on the entire business of the corporation, and render only such accounts, as he, in his capacity of the majority holder of the corporate stock, may require from himself in his capacity of "agent."

Personally, I do not care to give any more consideration to the alleged "foreign" character of such a corporation as this, than I am bound to do by legislation or the decisions of higher courts.

A corporation composed entirely of Marylanders, having its business entirely within Maryland, may, because its members choose to step across the State line and procure a foreign charter "for business reasons," differentiate itself in certain respects from a "home corporation," but I am not disposed to hold that by such action the jurisdiction of our courts is ousted any further than precedents or legislation require me to so hold.

The question so suggested is, however, not involved in this case.

The ruling of the court in the matter now before it is simply that the facts alleged in the bill set forth a good ground for the corporation to demand an accounting from its managing agent; that there are sufficient allegations in the bill charging that the officers of the corporation have been requested by the plaintiff to demand such an accounting, and have refused to do so by reason of fraud.

Under such circumstances, if proven, the stockholder has a right to bring the action himself, making the corporation a party, and this suit can only be properly brought in the jurisdiction where the party, from whom the accounting is desired, is subject to process, whether or not the corporation is "home" or "foreign" to this jurisdiction.

When such charges are made in the bill an answer is required.

II. As to the plea of Norris Sash Pulley Company.—This plea in effect denies the fraud, in refusing to demand other or different accounts from those furnished, and sets out that the best interests of the corporation will be subserved by requiring nothing further.

It seems to the court that the facts alleged in this plea are, if proven, a complete answer to the bill.

The only question is whether such a defence should be raised by plea or by answer.

The same testimony necessary to refute this plea would sustain the bill.

But if the evidence were taken as against the plea and the plaintiff were successful, the only order which the court could pass would be that the plea be dismissed and this defendant required to answer.

Then, in order to make a relevant answer, this defendant would be obliged to set up exactly the same facts and the plaintiffs would have to take the same testimony over again.

These considerations would seem to furnish the test whereby to determine whether the facts set up should be treated as plea or answer, and would

seem to require that they should be treated as the latter.

The plea will, therefore, be allowed to stand as the answer of the corporation defendant.